ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 JUL 27 PM 1:02

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TRUK INTERNATIONAL FUND LP,<br>Plaintiff,<br><br>vs.<br><br>DAVID W. WEHLMANN, CANO PETROLEUM, INC., S. JEFFREY JOHNSON, MORRIS B. SMITH, BEN DAITCH, MICHAEL J. RICKETTS, PATRICK McKINNEY, RANDALL BOYD, DONALD W. NIEMIEC, ROBERT L. GAUDIN, WILLIAM O. POWELL, III, CANACCORD ADAMS, INC., and CANACCORD CAPITAL CORPORATION,<br>Defendants. | No. 4:09-CV-308-A |

## MOTION BY CANO PETROLEUM, INC. & THE INDIVIDUAL DEFENDANTS TO DISMISS THE AMENDED COMPLAINT AND BRIEF IN SUPPORT

Ralph H. Duggins
State Bar No. 06183700
Scott A. Fredricks
State Bar No. 24012657
CANTEY HANGER LLP
600 W. 6th St., #300
Fort Worth, Texas 76102
(817) 877-2800
Fax: (817) 877-2807

Jonathan J. Lerner
*(admitted pro hac vice)*
Gregory A. Litt
*(admitted pro hac vice)*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000
Fax: (212) 735-2000
*Attorneys for Defendants Cano Petroleum,
Inc., David W. Wehlmann, Randall Boyd,
Donald W. Niemiec, Robert L. Gaudin and
William O. Powell, III*

Bill F. Bogle
State Bar No. 02561000
HARRIS, FINLEY & BOGLE, P.C.
777 Main Street Suite 3600
Fort Worth, Texas 76102-5341
(817) 870-8700
Fax: (817) 332-6121
*Attorneys for Defendants S. Jeffrey
Johnson, Morris B. Smith, Ben Daitch,
Michael J. Ricketts and Patrick McKinney.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS..........................................................................................................3

        A.    The Parties ..............................................................................................................3

                1.    The Purported Plaintiff Class.....................................................................3

                2.    The Defendants ..........................................................................................3

        B.    Cano's Proved Reserves Are Estimated Annually by Third-Party Consultants............................................................................................................4

        C.    Cano's Proved Reserve Estimates for June 30, 2007 Were Presented in July 2007 ................................................................................................................5

        D.    During Cano's 2007-2008 Fiscal Year, the SEC Published Comment Letters to Other Firms Regarding Their Proved Undeveloped Reserves .................5

        E.    In the Offering Documents, Cano Disclosed Its Expectation That Its Proved Undeveloped Reserves May Decrease ......................................................7

        F.    Cano's 2008 Proved Reserve Estimates Were Presented in July 2008 ....................8

        G.    The Amended Complaint ......................................................................................10

ARGUMENT..............................................................................................................................10

PLAINTIFF HAS FAILED TO PLEAD A VIOLATION OF THE SECURITIES ACT ..........................................................................................................................................10

I.    **Plaintiff Cannot Satisfy the Pleading Requirements for An Alleged Violation of the Securities Act** ..................................................................................11

        A.    Plaintiff is Required to Allege a Material Misstatement or Omission....................11

        B.    Plaintiff Must Plead Actual Facts Alleging a Probable Violation of the Securities Act.........................................................................................................12

        C.    Plaintiff's Claims Are Also Subject to Rule 9(b)'s Heightened Pleading Standards...............................................................................................................13

II.    **The Defendants Did Not Make Any Representations About Cano's Current or Future Proved Reserve Estimates**......................................................................14

| | | |
|---|---|---|
| III. | As a Matter of Law, Given Cano's Specific Warnings, the Alleged Misstatements and Omissions Are Immaterial | 15 |
| IV. | Plaintiff Has Not Alleged Sufficient Factual Content to Show That Cano's Disclosure Was Misleading | 18 |
| | A. Cano Properly Disclosed the Risk of a Reclassification of Reserves at Desdemona | 19 |
| | B. Cano Properly Disclosed the Risk of a Reclassification of Reserves at Pantwist | 20 |
| | C. Cano Did Not Misstate Its Reserves in the Panhandle, and it Properly Disclosed the Risk of Reclassification | 22 |
| CONCLUSION | | 25 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..................................................................11, 12, 13, 22, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................11, 12, 20

*Castlerock Management Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316
    (D.N.J. 2000)..........................................................................................................................12

*In re CompUSA, Inc. Securities Litigation*, No. 3:94-CV-1151-H, 1995 WL
    811960 (N.D. Tex. Oct. 30, 1995)............................................................................................4

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................12

*Coronel v. Quanta Capital Holdings Ltd.*, No. 07-CV-1405, 2009 WL 174656
    (S.D.N.Y. Jan. 26, 2009).......................................................................................................15

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) .................................................1, 15

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993) ....................................13

*In re iAsia Works, Inc. Securities Litigation*, No. C 01-3224, 2002 WL
    1034041 (N.D. Cal. May 15, 2002) ................................................................................15, 16

*Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004)........................................12, 15, 18

*Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-CV-0976, 2008 WL
    4449280 (S.D.N.Y. Sept. 30, 2008).......................................................................................13

*Magruder v. Halliburton*, No. 3:05-CV-1156-M, 2009 WL 854656 (N.D. Tex.
    Mar. 31, 2009)...........................................................................................................14, 20, 22

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994).........................................................................13

*In re OPUS360 Corp. Securities Litigation*, No. 01 Civ. 2938, 2002 WL
    31190157 (S.D.N.Y. Oct. 2, 2002)..................................................................................15, 16

*Pedroli ex rel. Microtune, Inc. v. Bartek*, 564 F. Supp. 2d 683 (E.D. Tex. 2008) ......................13

*R2 Investments LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005) ....................................................4

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .................................................................13, 20

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009)...................................................13

*In re Securities Litigation BMC Software, Inc.*, 183 F. Supp. 2d 860 (S.D. Tex. 2001) ..................................................................................................................4

## **STATUTES**

15 U.S.C. § 77k ..........................................................................................................11

15 U.S.C. § 77l ...........................................................................................................11

15 U.S.C. § 77o ..........................................................................................................11

17 C.F.R. § 210.4-10 ..................................................................................4, 21, 23, 24

17 C.F.R. § 229.302(b)(1) ............................................................................................5

Fed. R. Civ. P. 12(b)(6) ................................................................................................1

Fed. R. Civ. P. 8(a)(2) ..................................................................................................1

Fed. R. Civ. P. 9(b) .................................................................................................1, 13

Defendants Cano Petroleum, Inc. ("Cano") and S. Jeffrey Johnson, Morris B. Smith, Ben Daitch, Michael J. Ricketts, Patrick McKinney, David W. Wehlmann, Randall Boyd, Donald W. Niemiec, Robert L. Gaudin and William O. Powell, III (the "Individual Defendants"), respectfully submit this motion to dismiss the Amended Complaint of Truk International Fund LP pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a)(2) and 9(b) and brief in support.

## PRELIMINARY STATEMENT

This is a putative class action brought by Truk International Fund, LP, a Cayman Islands mutual fund which allegedly purchased Cano common stock in Cano's June 26, 2008 secondary offering ("Offering"). Like most, if not all investors in oil companies, Truk witnessed the precipitous drop in oil prices during the summer of 2008 and the concomitant decline in the stock prices of oil companies. No doubt viewing litigation as an insurance policy, in derogation of the Supreme Court's admonition that the securities laws are not intended "to provide investors with broad insurance against market losses," *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005), Truk rushed to the courthouse to file this lawsuit without adequately alleging a single violation of law that would entitle it to relief. Indeed, Plaintiff appears to have been in such a hurry it omitted to sue Cano -- the issuer -- and the Cano officers it has now sued in the Amended Complaint.[1]

In the Prospectus and other offering documents for the Offering (the "Offering Documents"), Cano included previous estimates of its proved oil and gas reserves, specifically noting that they had been prepared as of June 30, 2007 -- nearly a year before the Offering. Cano obtains estimates of its proved reserves as of June 30 each year in accordance with United

---

[1] The initial Complaint actually described Cano CEO S. Jeffery Johnson as a defendant, but failed to sue him. (Compl. ¶ 12.)

States Securities and Exchange Commission ("SEC") regulations. A few weeks after the Offering, Cano's proved reserve estimates as of June 30, 2008 became available. The 2008 estimates were lower than the prior year's estimates included in the Offering Documents.

Arguing from hindsight, Plaintiff alleges that Defendants must have known at the time of the Offering that Cano's upcoming proved reserve estimates would decline. But Plaintiff's claim rides roughshod over the very disclosures contained in the Offering Documents themselves. In the Prospectus Supplement issued in connection with the Offering, Cano specifically stated, "[W]e expect that our proved undeveloped reserves for the fiscal year ending June 30, 2008 may decrease." (Compl. ¶ 7.) In fact, Cano's *only* statements at the time of the Offering about its current or future reserves were warnings and detailed explanations of the risks that might cause the estimates to decline.

In an attempt to avoid the fatal impact these warnings have on its case, Plaintiff quibbles with the language of the warnings, claiming Cano should have stated its proved reserve estimates "will" decrease instead of stating it "expect[ed]" they "may" decrease. But Securities Act violations can only be based on *material* misstatements and omissions. Where, as here, offering documents warn of a specific risk to the issuer's business, courts have ruled that no reasonable investor would have been misled to think that the risk would not come to pass, and Plaintiff's complaint fails as a matter of law.

In any event, the Amended Complaint fails to allege actual facts to create a plausible inference that the Defendants knew or should have known that Cano's proved reserves would definitely decrease. In its Amended Complaint, Plaintiff mistakenly alleges that Cano was bound by comments from the SEC staff to other oil and gas companies about their proved reserves. As the SEC itself has explained, SEC staff comment letters relate only to the specific companies that receive them and are based on those companies' particular circumstances. As

2

such, they do not create any rules of general applicability.

Plaintiff also advances the implausible claim that Cano's estimates of its "proved undeveloped reserves violated long-extant regulatory standards as well as Cano's own purported standards for booking proved reserves." (Am. Compl. ¶ 8.) On its face, the Amended Complaint is bereft of *any* facts to support this claim, which is based solely on conclusory references to regulatory definitions, including some that are facially incorrect. These are precisely the kind of allegations the Supreme Court has instructed courts to disregard on a motion to dismiss.

Despite amending the initial Complaint, Plaintiff has failed to allege any material misrepresentation or omission by any of the Defendants. Plaintiff cannot satisfy even the barest pleading standards of the Federal Rules of Civil Procedure. In light of the clear cautionary language in the Offering Documents, further efforts to replead these claims would be fruitless. The Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### A. The Parties

#### 1. The Purported Plaintiff Class

Plaintiff Truk International Fund LP is a Cayman Islands-based mutual fund with offices in New York and an alleged purchaser of Cano common stock. Truk seeks to represent a purported class of persons or entities who purchased Cano common stock pursuant to the Prospectus. (Am. Compl. ¶¶ 1, 13, 31.)

#### 2. The Defendants

Cano is a Fort Worth-based independent oil and natural gas company operating in Texas, Oklahoma and New Mexico. (Am. Compl. ¶¶ 14, 43.) Cano focuses on oil and gas recovery on "mature fields" that have already undergone primary production, using enhanced recovery techniques known as secondary and tertiary recovery methods. (Am. Compl. ¶ 40.)

3

In the Amended Complaint, Plaintiff focuses on three of Cano's properties: Desdemona, Pantwist, and Panhandle. The Desdemona field is located in central Texas over the Barnett Shale and Duke Sand formations. (Am. Compl. ¶ 65.) Cano's Panhandle leases extend over portions of the Brown and White Dolomite and Granite Wash oil trends in the Texas Panhandle. (Am. Compl. ¶ 60.) Pantwist is located in the same area of the Panhandle. (Am. Compl. ¶ 73.)

Each of the Individual Defendants is, or was previously, either an officer of Cano or a director, or both. (Am. Compl. ¶¶ 15-26.) Defendants Canaccord Capital Corporation and Canaccord Adams, Inc. served as the underwriters of the Offering. (Am. Compl. ¶¶ 27-28.)

**B.   Cano's Proved Reserves Are Estimated Annually by Third-Party Consultants**

Proved reserves are "the estimated quantities of crude oil, natural gas, and natural gas liquids which geological and engineering data demonstrate with reasonable certainty to be recoverable in future years from known reservoirs under existing economic and operating conditions." 17 C.F.R. § 210.4-10. As Cano explained in the Prospectus, "[t]he process [of estimating proved reserves] involves significant decisions and assumptions in the evaluation of available geological, geophysical, engineering and economic data for each reservoir. Therefore, these estimates are inherently imprecise."[2] This is echoed by the SEC's own explanation, in a document Plaintiff relies on in the Amended Complaint, that "it is difficult, if not impossible, to write reserve definitions that easily cover all possible situations. Each case has to be studied as

---

[2] *See* App. 35 (Cano's Prospectus and Prospectus Supplement (Form 424B5), at 9 (June 26, 2008) ("June 26, 2008 Prospectus")). On this motion to dismiss, the Court may consider the full text of documents partially quoted in the Complaint, *see In re CompUSA, Inc. Sec. Litig.*, No. 3:94-CV-1151, 1995 WL 811960, at *2 & n.2 (N.D. Tex. Oct. 30, 1995), documents integral to the complaint, *see In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 881-84 (S.D. Tex. 2001), and documents actually filed with the SEC, *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005), even if they are not mentioned in the complaint, *see In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d at 883-84.

4

to its own unique issues."[3]

Cano relies on third-party consultants to prepare its reserve estimates annually as of June 30, in accordance with the SEC's requirement that companies report their reserves at the end of each fiscal year. *See* 17 C.F.R. § 229.302(b)(1).[4] Cano announces the results of its consultants' proved reserve study each year after it receives them in mid-July.[5]

C.  **Cano's Proved Reserve Estimates for June 30, 2007 Were Presented in July 2007**

Forrest A. Garb & Associates, Inc. ("Forrest Garb"), an independent petroleum and geological engineering firm, prepared estimates of Cano's proved reserve as of June 30, 2007. Cano presented them publicly on July 17, 2007.[6] Forrest Garb's overall estimate of 66.7 million barrels of oil equivalent (BOE) as of June 30, 2007, included 35.5 million BOE of proved reserves for Cano's Panhandle project; 6.8 million BOE for Pantwist; and 11.9 million for Desdemona, of which 6.8 million BOE were attributed to a program in the Barnett Shale.[7]

D.  **During Cano's 2007-2008 Fiscal Year, the SEC Published Comment Letters to Other Firms Regarding Their Proved Undeveloped Reserves**

In the months that followed Cano's publication of its 2007 estimates, the staff of the SEC unsealed letters they had written to other oil and gas companies commenting on those companies' estimates of proved undeveloped reserves in their SEC filings.

The SEC staff regularly provides comments to public companies in order to improve or enhance their filings. Since 2005, the SEC has routinely allowed public access to this

---

[3] *See* App. 203 (SEC, Excerpt From Current Issues and Rulemaking Projects Outline (Nov. 14, 2000)).

[4] *See* App. 154 (Cano's Annual Report (Form 10-K), at 4 (Sept. 11, 2007) ("Cano's 2007 10-K")); App. 186 (Cano's Annual Report (Form 10-K), at 5 (Sept. 11, 2008) ("Cano's 2008 10-K")).

[5] *See* App. 179 (Cano's Current Report (Form 8-K), Ex. 99.1 (July 23, 2008)); App. 148 (Cano's Current Report (Form 8-K), Ex. 99.1 (July 18, 2007) ("Cano's July 18, 2007 8-K")).

[6] *See* App. 148 (Cano's July 18, 2007 8-K, Ex. 99.1).

[7] *See id*; App. 155-56 (Cano's 2007 10-K, at 31-32).

5

correspondence 45 days after the staff completes its review.[8] According to the SEC, "[t]he letters set forth staff positions on a particular filing only and do not constitute an official expression of the Commission's views. Further, these letters set forth the staff's position, are limited to the specific facts of the filing to which they apply, and do not apply to other filings."[9]

In July 2007, the SEC staff completed a review of a recent filing by Parallel Petroleum Corporation ("Parallel").[10] During the review, the staff told Parallel that in connection with one of its projects in the Barnett Shale, it should "limit estimates of proved undeveloped reserves from future horizontal wells to two parallel offset wells to a productive horizontal well."[11] Acknowledging that the applicable regulations do not specifically limit the number of offset wells, the staff advised that Parallel's circumstances warranted a limit of two:

> [Y]our proved undeveloped reserves may in some cases be based on as many as eight undeveloped locations offsetting drilled units. . . . Although there are circumstances in which a horizontal well can replace several vertical wells, areas offsetting a horizontal well that are reasonably certain of production would generally be limited to direct parallel offsets to an existing horizontal well.
>
> Based on the information you provide, it appears that the majority of the diagonal horizontal well extends too far beyond the existing well to be considered a direct offset. Similarly, horizontal wells to be drilled in opposite directions of the toe and heal of an existing horizontal well would not provide a sufficient level of certainty to claim additional reserves. In other words, *under the circumstances you describe, it appears that proved undeveloped reserves should be limited to the equivalent of two direct parallel offsetting locations to an existing horizontal well.*[12]

---

[8] *See* App. 210 (Press Release, SEC, SEC Staff to Publicly Release Comment Letters and Responses (June 24, 2004), *available at* http://www.sec.gov/news/press/2004-89.htm ("June 24, 2004 SEC Press Release")).

[9] *Id.*

[10] The SEC staff's letters to Parallel became publicly available on August 30, 2007, 45 days after the SEC informed Parallel that it had completed its review of Parallel's filing. *See* App. 218 (Parallel Petroleum Corp., SEC Staff Comment Letter (July 16, 2007)). The file for each letter on the SEC's website includes a date on which the letter was transferred from "private-to-public." The private-to-public date on each of the letters to Parallel is August 30, 2007. *See, e.g.,* App. 215 (Complete Submission Text File For May 14, 2007 Parallel Petroleum Comment Letter).

[11] App. 216 (Parallel Petroleum Corp., SEC Staff Comment Letter, at 1 (July 9, 2007)).

[12] App. 213 (Parallel Petroleum Corp., SEC Staff Comment Letter, at 2 (May 14, 2007)) (emphasis added).

Also during Cano's 2007-2008 fiscal year, the SEC staff advised several companies to exclude from their proved reserves properties that they did not intend to develop within five years, unless the company could justify a longer period. For example, the staff asked Edge Petroleum Corp. to either justify its inclusion of proved reserves with a nine-year time horizon or exclude them from its estimates:

> Normally, we would not expect the attribution of undeveloped proved reserves to be more than five years in the future. Please provide us with the basis of attributing proved reserves to these wells and explain why you believe it is reasonably certain these projects will be completed and the reserves still remaining in nine years. Alternatively, please remove these reserves from your proved reserves.[13]

### E. In the Offering Documents, Cano Disclosed Its Expectation That Its Proved Undeveloped Reserves May Decrease

On June 26, 2008, Cano conducted its Offering pursuant to a Registration Statement and Preliminary Prospectus on Form S-3, filed with the SEC on December 13, 2007; a Preliminary Prospectus Supplement incorporating the Prospectus, filed with the SEC on June 25, 2008; and a Prospectus Supplement incorporating the final Prospectus, filed with the SEC on June 26, 2008 (referred to herein as the "Offering Documents"). (Am. Compl. ¶ 2.)

The Offering Documents included Cano's most recent proved reserve estimates, which had been reported nearly a year earlier. Throughout the documents, Cano explicitly stated that the estimates were "as of June 30, 2007." The Offering Documents did not provide estimates as of the time of the offering or predictions of future estimates. Nevertheless, Cano included extensive cautionary language specifically with respect to its proved reserves.

In the Prospectus, Cano stated that "[t]he actual quantities and present value of

---

[13] App. 220 (Edge Petroleum Corp., SEC Staff Comment Letter, at 2 (Mar. 5, 2008)).

our proved reserves may be lower than we have estimated."[14] The Prospectus explained why the estimates of proved reserves might not be accurate:

> The process of estimating oil and natural gas reserves is complex. The process involves significant decisions and assumptions in the evaluation of available geological, geophysical, engineering and economic data for each reservoir. Therefore, these estimates are inherently imprecise. Actual future production, oil and natural gas prices, revenues, taxes, development expenditures, operating expenses and quantities of recoverable oil and natural gas reserves most likely will vary from these estimates and vary over time. Such variations may be significant and could materially affect the estimated quantities and present value of our proved reserves. In addition, we may adjust estimates of proved reserves to reflect production history, results of exploration and development drilling, results of secondary and tertiary recovery applications, prevailing oil and natural gas prices and other factors, many of which are beyond our control.[15]

Cano issued an even stronger caution in the June 2008 Prospectus Supplement in light of comment letters that the SEC issued to other companies:

> This prospectus incorporates by reference estimates of our proved reserves as of the fiscal year ended June 30, 2007. Based on recent guidance regarding the appropriate method for calculating proved undeveloped reserves provided in publicly available comment letters issued by the Securities and Exchange Commission to certain companies, *currently, we expect that our proved undeveloped reserves for the fiscal year ending June 30, 2008 may decrease.*[16]

### F.    Cano's 2008 Proved Reserve Estimates Were Presented in July 2008

Cano engaged a new petroleum engineering firm, Miller & Lents, Ltd., to prepare its proved reserve estimates as of June 30, 2008.[17] Cano announced the results of the Miller &

---

[14] App. 85 (Cano Petroleum, Inc., Registration Statement and Preliminary Prospectus (Form S-3), at 9 (Dec. 13, 2007) ("Dec. 13, 2007 Registration Statement")); App. 35 (June 26, 2008 Prospectus, at 9).

[15] App. 85-86 (Dec. 13, 2007 Registration Statement, at 9-10); App. 35-36 (June 26, 2008 Prospectus, at 9-10).

[16] App. 12 (June 26, 2008 Prospectus, at S-7 (emphasis added)). On the cover pages of the both the Prospectus and the Prospectus Supplement, Cano admonishes readers to take note of the specific risk factors therein, including this cautionary language on proved reserves. App. 3, 25 (June 26, 2008 Prospectus, at Prospectus Supplement Cover Page & Prospectus Cover Page).

[17] During the July 23, 2008 conference call which Plaintiff relies on in the Amended Complaint, Cano explained that it switched to Miller & Lents both because of personnel changes at Forrest Garb, and because Miller & Lents was better known in the financial markets. App. 199 (Cano Petroleum, Inc. Conference Call, at 10 (July 23, 2008) ("July 23, 2008 Conference Call")).

8

Lents report in a July 22, 2008 press release.[18] Some of the reserve estimates were higher than they had been as of July 30, 2007, and others were lower, but in the aggregate, Cano's proved reserve estimates decreased as of June 30, 2008. The net decrease of approximately 13.5 million BOE was driven primarily by reclassifications of reserves from proved undeveloped reserves to probable reserves at Cano's Panhandle, Desdemona, and Pantwist projects.[19]

During the July 23, 2008 conference call cited in the Amended Complaint, Cano executives noted that proved undeveloped reserves at Desdemona were reduced due to a decision to book a maximum of two offsetting locations for each producing well, in light of the SEC staff's comments to Parallel.[20] At the Panhandle and Pantwist projects, proved reserves were reclassified because Cano was not yet developing the projects or had no immediate plans to do so. With respect to the Panhandle, Cano's executives explained that proved undeveloped reserves attributable to the leases on the Granite Wash formation had to be reclassified as probable reserves "until we start to inject in that formation." (*See* Am. Compl. ¶ 62.) Likewise, for the Pantwist project, the Cano executives explained that they no longer had immediate plans to develop the project (and were thus looking to sell it). (*See* Am. Compl. ¶ 76.)

Several weeks later, Cano summarized the two reasons for these reclassifications in its 2008 10-K. Cano explained that the decrease "was primarily driven by [1] revisions to our five-year development plan based on current industry practice that placed many reserves outside the window of allowed proved reserve classification and [2] reduced the allowed [proved undeveloped] locations booked per [proved developed producing] location."[21] In other words,

---

[18] App. 179 (Cano's Current Report (Form 8-K), Ex. 99.1 (July 23, 2008)).

[19] App. 191, 201 (July 23, 2008 Conference Call, at 2, 12).

[20] App. 201 (July 23, 2008 Conference Call, at 12).

[21] App. 188-89 (Cano's 2008 10-K, at 35-36).

9

Cano explained that its estimates declined because Miller & Lents applied to Cano the SEC staff's recent guidance to other companies.

### G. The Amended Complaint

Plaintiff filed the initial Complaint in October 2008, approximately three months after the Offering took place, alleging that it was damaged by the decline in Cano's stock price. (Compl. ¶ 35.) Plaintiff asserted claims under the Securities Act of 1933 against Cano's outside directors and the underwriters of the Offering, but did not assert claims against Cano or its officers. Plaintiff's claims were premised entirely on the following allegation: "The Prospectus contained statements concerning proved reserve amounts and standards that were materially false and overstated Cano's proved reserves." (Compl. ¶ 26.) The Complaint did not identify a single statement in the Offering Documents alleged to be false.

Shortly before the defendants were due to file responses to the initial Complaint, Plaintiff filed the Amended Complaint, adding Cano and several Cano officers as defendants. The Amended Complaint asserts violations of Sections 11, 12 and 15 of the Securities Act.

## ARGUMENT

## PLAINTIFF HAS FAILED TO PLEAD A VIOLATION OF THE SECURITIES ACT

The Amended Complaint fails to allege a violation of the Securities Act of 1933. Plaintiff has not provided an adequate factual basis for its claim that "Defendants knew or should have known, but did not disclose, that Cano's proved reserves were, at the time of the Offering, *materially less* than the reserve figures contained in the Offering Documents." (Am. Compl. ¶ 8).

Under the Securities Act, Plaintiff must allege that Defendants made a *material* misstatement or omission in connection with the Offering. The Supreme Court has held that a complaint must be dismissed unless the "plaintiff pleads *factual content* that allows the court to