A ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 AUG 17 PM 4:09

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TRUK INTERNATIONAL FUND LP, | § § | |
| Plaintiff, | § § | NO. 4:09-CV-308-A |
| VS. | § § § | |
| DAVID W. WEHLMANN, CANO PETROLEUM, INC., S. JEFFREY JOHNSON, MORRIS B. SMITH, BEN DAITCH, MICHAEL J. RICKETTS, PATRICK MCKINNEY, RANDALL BOYD, DONALD W. NIEMIEC, ROBERT L. GAUDIN, WILLIAM O. POWELL, III, CANACCORD ADAMS, INC., and CANACCORD CAPITAL CORPORATION, | § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION ..........................................................................................................1

STATEMENT OF FACTS .............................................................................................2

ARGUMENT ..................................................................................................................9

I.   DEFENDANTS HAVE NOT MET THE STANDARDS FOR DISMISSING
     A SECTION 11 CLAIM ......................................................................................9

     A.   The Pleading Standard ...............................................................................11

          1.   Rule 8 Notice Pleading Standard Govern Plaintiff's
               Claims ................................................................................................11

          2.   Even if Rule 9(b) Is Held to Apply, Plaintiff
               Satisfies It Here .................................................................................15

II.  THE COMPLAINT ADEQUATELY ALLEGES THAT
     THE OFFERING DOCUMENTS MISSTATED AND/OR OMITTED
     THE TRUE NATURE OF CANO'S RESERVES .............................................16

     A.   The Offering Documents Materially Misrepresented the
          Panhandle Proved Reserves As of June 2007 ...........................................17

     B.   The Offering Documents' Statements Concerning Desdemona
          and Pantwist Were Materially Misleading ................................................19

          1.   A Contingent Warning Is Insufficient When Defendants
               Are Aware of An Actual Materialized Risk......................................20

          2.   Defendants Knew That Desdemona Reserves Would
               Decrease Materially In 2008 .............................................................21

          3.   Defendants Knew That Pantwist Reserves Would
               Decrease Materially In 2008 .............................................................25

          4.   The Substantial Drop in Cano's Stock Price After It
               Reported Lower Reserves Demonstrates that the "Warning"
               that Reserves "May Decrease" As Stated in the Prospectus
               Was Not Sufficient ............................................................................28

i

III.   THE UNDERWRITERS' SPECIFIC ARGUMENTS SHOULD BE
       REJECTED ......................................................................................29

CONCLUSION ........................................................................................30

Case 4:09-cv-00308-A   Document 104   Filed 08/17/2009   Page 3 of 20

# TABLE OF AUTHORITIES

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
   291 F.3d 336 (5th Cir. 2002) .................................................................................................. 15

*American Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of Am.*,
   362 F. Supp. 2d 744 (N.D. Tex. 2005) .................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 9

*Catogas v. Cyberonics, Inc.*,
   292 Fed. Appx. 311 (5th Cir. 2008) ........................................................................................ 28

*Coronel v. Quanta Capital Holdings, Ltd.*,
   No. 07-1405, 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ...................................................... 13

*Credit Suisse First Boston Corp. v. ARM Fin. Group, Inc.*,
   No. 99 CIV 12046 WHP, 2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) .................................. 21

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) .................................................................................................................. 9

*Griffen v. PaineWebber Inc.*,
   84 F. Supp. 2d 508 (S.D.N.Y. 2000) ....................................................................................... 29

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ..................................................................................................... 2, 10, 16

*Holzwasser v. Staktek Holdings, Inc.*,
   No. A-05-CA-239-LY, 2006 WL 897746 (W.D. Tex. Mar. 30, 2006) .................................... 10

*Huddleston v. Herman & MacLean*,
   640 F.2d 534 (5th Cir. 1981) ........................................................................................ 2, 20, 24

*Hulliung v. Bolen*,
   548 F.Supp.2d 336 (N.D. Tex. 2008) ........................................................................................ 1

*In re Adams Golf, Inc. Sec. Litig.*,
   381 F.3d 267 (3d Cir. 2004) .................................................................................................... 11

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir.1989) .................................................................................................. 24

*In re CBT Group PLC Sec. Litig.*,
   2000 U.S. Dist. LEXIS 19214 (N.D. Cal. 2000) .................................................................. 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................................... 14

*In re DoubleClick Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................................. 11

*In re Dynegy, Inc. Sec. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ................................................................................. 12

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*,
   540 F. Supp. 2d 800 (S.D. Tex. 2007) ..................................................................... 11, 14, 29

*In re Fleming Cos. Inc. Sec. & Deriv. Litig.*,
   No. 5-03-md-1530, 2004 WL 5278716 (E.D. Tex. June 16, 2004) ..................................... 12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................................. 15

*In re Globestar Sec. Litig.*,
   No. 01 Civ. 1748, 2003 WL 22953163 (S.D.N.Y. Dec. 15, 2003) ...................................... 21

*In re iAsia Works, Inc. Sec. Litig.*,
   No. C 01-3224, 2002 WL 1034041 (N.D. Cal. May 15, 2002) ..................................... 15, 16

*In re Marion Merrell Dow Inc. Sec. Litig.*,
   No. 92-0609-CV-W-6, 1993 WL 393810 (W.D. Mo. Oct. 4, 1993) ................................... 21

*In re OPUS360 Corp. Sec. Litig.*,
   No. 01Civ.2938, 2002 WL 31190157 (S.D.N.Y. Oct. 2, 2002) .......................................... 15

*In re Prestige Brands Holding, Inc.*,
   No. 05 CV. 06924(CLB), 2006 WL 2147719 (S.D.N.Y. July 10, 2006) ...................... 11, 29

*In re Prudential Secs. Inc. P'ships Litig.*,
   930 F. Supp. 68 (S.D.N.Y. 1996) ............................................................................. 2, 20, 24

*In re Seitel, Inc. Sec. Litig.*,
   447 F. Supp. 2d 693 (S.D. Tex. 2006) ................................................................................. 28

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ................................................................................................ 14

*In re Twinlab Corp. Sec. Litig.*,

    103 F. Supp. 2d 193 (E.D.N.Y. 2000) .................................................................................. 10, 11

*In re Vivendi Universal, S.A.*,
    381 F.Supp.2d 158 (S.D.N.Y. 2003) ......................................................................................... 28

*In re Washington Mutual Inc. Sec. Litig.*,
    Nos. 2:08-MD-1919, 2009 WL 1393679 (W.D. Wash. May 15, 2009) ................................... 14

*In re WRT Energy Sec. Litig.*,
    No. 96 Civ. 3610, 2005 WL 323729 (S.D.N.Y. Feb. 9, 2005) ................................................. 13

*Isquith v. Middle South Utils., Inc.*,
    847 F.2d 186 (5th Cir. 1988) ..................................................................................................... 10

*Kapps v. Torch Offshore, Inc.*,
    379 F.3d 207 (5th Cir. 2004) ................................................................................................. 9, 11

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07-0976, 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) .................................................... 13

*Lewis v. Fresne*,
    252 F.3d 352 (5th Cir. 2001) ..................................................................................................... 11

*Lone Star Ladies Inv. Club v. Schlotzky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) ................................................................................... 9, 11, 13, 14

*Magruder v. Halliburton Co.*,
    No. 3-05-CV-1156, 2009 WL 854656 (N.D. Tex. Mar. 31, 2009) ........................................... 13

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ............................................................................................... 12, 14

*Pedroli ex rel. Microtune Inc. v. Bartek*,
    564 F. Supp. 2d 683 (E.D. Tex. 2008) ...................................................................................... 13

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ......................................................................................... 12, 13, 24

*Rosenbaum Capital LLC v. McNulty*,
    549 F.Supp.2d 1185 (N.D. Cal. 2008) ...................................................................................... 21

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ................................................................................................... 14

*Schoenhaut v. Am. Sensors, Inc.*,
    986 F. Supp. 785 (S.D.N.Y. 1997) ........................................................................................... 14

*Schultz v. Tomotherapy Inc.*,
   Nos. 08-cv-314-slc, 08-cv-342-slc, 2009 WL 2032372 (W.D.Wis. July 9, 2009).................. 14

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996)........................................................................................... 10

*Sonnier v. State Farm Mutual Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007)............................................................................................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499 (2007).............................................................................. 28

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976)....................................................................................................... 10

*Tuchman v. DSC Communications Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ......................................................................................... 13

*Zucker v. Quasha*,
   891 F. Supp. 1010 (D. N.J. 1995).................................................................................. 16

# INTRODUCTION

This case concerns the sale by Cano Petroleum, Inc. ("Cano") and its underwriters of seven million shares of the company's stock for $8 per share in a public offering pursuant to a publicly filed registration statement and prospectus (the "Offering Documents"). The public offering, commenced on June 26, 2008 and completed on July 1, 2008 (the "Offering"), was a success. Cano took in $56 million while the underwriters, Canaccord Adams, Inc. and Canaccord Capital Corp., (together "Canaccord") earned a healthy fee for packaging and selling Cano's Offering.

An oil company like Cano sees its stock price generally rise and fall on the amount and value of its oil and gas reserves. In order to sell the Offering to the investing public, defendants led investors to believe that Cano's properties contained materially more oil and gas than was actually the case. On July 22, 2008, just three weeks after the Offering, Cano revealed that as of the time of the Offering its reserves contained 20% less oil than had been represented in the Offering Documents – a 13.4 million barrel of oil equivalent ("BOE") shortfall.[1] On this news, Cano's share price declined sharply and immediately, falling 19% on July 23, 2008, and 15% the following day. From the Offering price of $8 per share, Cano is now trading at 65¢.

---

[1] *See* Cano App. 175-182 (Ex. F). "¶" refers to are to the Amended Complaint – Class Action (the "Complaint"). "Cano Br." and "Cano App." refer to the Motion By Cano Petroleum, Inc. & the Individual Defendants to Dismiss the Amended Complaint and Brief in Support (Dkt. #91), and their appendix in support of their motion to dismiss (Dkt. #92), respectively. "UW Br." and "UW App." refer to the underwriter defendants Canaccord Adams, Inc. and Canaccord Capital Corporation's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support (Dkt. #93), and their appendix in support of their motion to dismiss (Dkt. #94), respectively. The Court may take judicial notice of and consider Cano's public documents and stock prices on these motions to dismiss. *Hulliung v. Bolen*, 548 F.Supp.2d 336, 339 n. 2 (N.D. Tex. 2008) ("Although a court cannot generally consider evidence outside the pleadings in ruling on a motion to dismiss, exceptions to this rule include 'matters subject to judicial notice (such as filings with the SEC), stock prices, and matters of public record'").

The Complaint alleges in detail facts showing why the Cano defendants knew or should have known by the Offering date what Cano itself announced just days later – that Cano's oil reserves were materially less at the time of the Offering than they were represented to be in the Offering Documents.

With their motions to dismiss, defendants now seek to hide behind some boilerplate "warnings" that Cano's reserves "might" or "may" be less than reported than the amounts represented in the Offering Documents – when in fact the Cano defendants already knew or should have known that reserves would decline materially. The Fifth Circuit has squarely rejected these types of defenses: "To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981), *rev'd in part on other grounds, sub-nom.*, *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). *See also In re Prudential Secs. Inc. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.").

Likewise, this Court should not allow defendants to get away with taking in $56 million from investors who purchased Cano stock pursuant to Offering Documents that they had every right to assume said all that defendants knew about Cano's reserves.

### STATEMENT OF FACTS

Cano is an oil and natural gas company engaged both in primary oil/gas recovery (*e.g.*, conventional well drilling) and in "enhanced" oil recovery using "secondary" and "tertiary" recovery methods such as "waterflooding" (¶¶ 3, 37-42). The primary driver of oil/gas company

2

valuations is reported oil/gas reserves (¶ 38). Regulations[2] require public oil/gas companies such as Cano, when filing annual financial statements, to report "proved" reserves, which regulatory standards have endowed with a high degree of certainty (¶¶ 38-43, 50-52; 17 C.F.R. § 210.4-10). As Cano's fiscal year ends on June 30 (as opposed to December 31), Cano typically reports its proved reserves (as of June 30) in "mid-July" of each year (Cano. Br. at 5 and fn.5) after receiving a reserve report from a petroleum engineering firm (*Id.*).

Cano represented as of June 30, 2007 a total of 66.7 million BOE of proved reserves (¶¶ 4, 44-52) on seven different properties (¶ 44). The Complaint focuses on three of these properties accounting for most of Cano's proved reserves: (1) the Panhandle (¶¶ 8(b), 59-63); (2) Desdemona (¶¶ 8(a), 64-72), and Pantwist (¶¶ 8(c), 73-77). With respect to each property, the Complaint alleges specific facts demonstrating that, at the time of the Offering: (1) information was not merely "available to" defendants but in fact known by defendants, that (2) rendered materially misleading defendants' representations in the Offering Documents relating to Cano's purported reserves. (¶¶ 4-8). Pursuant to these misleading offering documents, defendants sold 7 million shares of Cano stock at the price of $8 per share (¶ 1).

All of the Offering Documents made identical representations as to: (1) the amount of Cano's total proved reserves as of June 30, 2007 at each of Cano's seven properties, (¶¶ 4-6, 48-49); (2) the standards Cano purported to follow in determining reserves to be "proved" reserves; and (3) general "risk factors" relating to reserves and reserve reporting (¶ 7).

The June 25, 2008 preliminary prospectus and the June 26, 2008 Prospectus provided:

---

[2]   *See* Financial Accounting Standards Board, Statement of Financial Accounting Standards No. 69, *Disclosures about Oil and Gas Producing Activities* ("SFAS 69"); 17 C.F.R. § 229.302(b)(1); Regulation S-X Rule 4-10, *Financial Accounting and Reporting for Oil and Gas Producing Activities Pursuant to the Federal Securities Laws and the Energy Policy and Conservation Act of 1975*, 17 C.F.R. § 210.4-10.

> *Our proved undeveloped reserves may decline in response to recent Securities and Exchange Commission guidance.*
>
> This prospectus incorporates by reference estimates of our proved reserves as of the fiscal year ended June 30, 2007. Based on recent guidance regarding the appropriate method for calculating proved undeveloped reserves provided in publicly available comment letters issued by the Securities and Exchange Commission to certain companies, currently, we expect that our proved undeveloped reserves for the fiscal year ending June 30, 2008 *may* decrease. (Emphasis added). (¶ 7)

**Panhandle**. The Complaint alleges that purported Panhandle reserves of 35.5 million BOE as of June 2007 were materially false as of June 2007, and rendered the Prospectus materially false. Cano's Panhandle properties covered multiple, distinct geological oil-bearing formations including the "Brown Dolomite" and the "Granite Wash" (¶ 60). Cano's Panhandle waterflooding operations, however, had focused only on the Brown Dolomite formation (¶ 60); as defendants admitted on July 23, 2008, they had yet to put a drop of water into the Granite Wash (¶ 62). Unbeknownst to the public 5 million of the 35.5 million BOE of purported proved Panhandle reserves were (secretly) ascribed to the Granite Wash, when in fact no water had been pumped into the Granite Wash. This violated the SEC's regulations concerning proved reserves (¶ 50) and Cano's own claimed standards for proved reserves as stated in the Prospectus (¶¶ 50, 52), in relevant part:

> Under no circumstances should estimates for proved undeveloped reserves be attributable to any acreage for which an application of fluid injection or other improved recovery techniques is contemplated, unless such techniques have been proved effective by actual tests in the area and in the same reservoir (¶ 50; Prospectus at 43)

Thus, 5 million BOE of proved reserves (secretly) attributed to the Granite Wash were falsely claimed, and the standards Cano purported to follow were likewise false (¶ 63). On July 22, 2008, defendants published the figures from their reserve report as of June 30, 2008

4

removing these 5 million BOE of "proved" reserves from Cano's truly "proved" reserves, as defendants acknowledged during Cano's July 23, 2008 conference call:

> there was approximately 5 million barrels in the Granite Wash that we had to reclassify to move out to probables *until we start to inject in that formation...* the other write-down of 5 million barrels out of the Granite Wash in the Panhandle that was in the waterflood was really just moved out from a PUD to a probable *until we started to put water over there in the Granite Wash. We still think it's going to flood real nice* and we'll have the reserves. *But until there's water going in there that was pushed back to a probable.* (¶ 62) (emphasis added)

It is doubly remarkable that, on their July 23, 2008 conference call, defendants represented that, with respect to Cano's reserve writedowns of 17.7 million BOE for Desdemona, Pantwist and Panhandle (¶¶ 5-6), the "5 million barrels that we were *not* really anticipating was the Granite Wash" (Cano App. at 199) (emphasis added). First, given that Cano had never injected water into the Granite Wash, and given reserve standards requiring it, Cano had always known that the claim of 5 million BOE of Granite Wash reserves was materially false. Second, defendants' identification of the Panhandle writedown as the one "we were not really anticipating" plainly concedes that Cano in fact had been "anticipating" reserve writedowns for Desdemona and Pantwist.

**Desdemona**. Defendants represented that, as of June 30, 2007, proved reserves in Desdemona were 11.9 million, of which 6.8 million BOE were ascribed to natural gas reserves in a geological formation known as the Barnett Shale (Cano Br. at 5) principally exploited by drilling horizontal wells (¶¶ 66-67). Unbeknownst to the public, these Barnett Shale proved reserves resulted from the practice of booking, in addition to proved reserves from actually-drilled wells (in the amount of "X"), purported proved undeveloped reserves from *eight* additional theoretical wells that could be drilled in areas offsetting the actually-drilled well (yielding further proved undeveloped reserves of "8X") (¶ 68). As the graphic at ¶ 68 shows,

5

these eight "offset" locations include: (1) the two direct parallel offsets on either side of the producing well; and (2) a further six offset locations positioned beyond the "heel" and "toe" of the producing well.

On August 30, 2007, the SEC made public a series of comment letters (reproduced at Cano App. 212-218) to another oil/gas company, Parallel Petroleum Corporation ("Parallel"), stating that that practice of booking eight offset locations as proved undeveloped reserves was impermissible: only the two "direct parallel offsets" qualified as proved, while the six further offset locations which extended beyond the toe and heel of the producing well could not (¶¶ 8(a), 68-69; Cano App. 213).

Defendants argue that such SEC comment letters are "limited to the specific facts of the filing to which they apply," and that plaintiff in any event has not established defendants' awareness, prior to receiving the reserve report after the Offering, of any relevance or impact of such letters to Cano (Cano Br. at 5-6, 17-21; UW Br. at 7-13). Defendants' factual contentions are doubly irrelevant under operative legal standards governing both this motion and plaintiff's Securities Act claim. Moreover, they are contradicted by the specific facts pled.

First, the "specific facts" operative with respect to Parallel were identical to Cano's situation: Parallel, just like Cano, was (1) drilling horizontal wells, (2) in the Barnett Shale, and (3) claiming as "proved", purported reserves that could be recovered from eight additional offset locations (Cano App. 213; ¶ 69). Second, the SEC's Parallel letters stated that the SEC was not making an "exception" to any rule in limiting Parallel to two offsets, but on the contrary stating a "generally"-applicable rule to which companies must conform (Cano App. 213; ¶ 69). Third, and leaving no possible doubt as to the issue of the Cano defendants' awareness of the letters and their relevance, defendants themselves referred in the Prospectus to "recent guidance regarding

6

the appropriate method for calculating proved undeveloped reserves provided in publicly available comment letters issued by the Securities and Exchange Commission to certain companies" (¶ 7). However, in the same breath, defendants misleadingly represented that such SEC guidance *"may"* cause Cano's reserves as of June 2008 to decline (¶ 7), when in fact defendants knew that such guidance would certainly cause a material decline (¶¶ 8, 59-77). Fourth, this was *a priori* evident as a matter of straightforward logic: purported proved reserves previously claimed in the amount of "8X" could in fact only be claimed in the amount of "2X" – *i.e.*, a 75% reduction to proved undeveloped reserves. Fifth, on July 23, 2008, defendants admitted to have been "expecting to write down on the Barnett Shale" (¶ 70).[3]

Why had they been so expecting? Clearly, because at the time of the Offering they were (1) aware of the Parallel letters, (2) aware of their applicability to Cano, and (3) therefore aware of the material impact they would certainly have to proved undeveloped reserves – all of which rendered misleading the Prospectus's misrepresentations that reserves "may" decline in 2008.

**Pantwist.** Plaintiff's allegations with respect to Pantwist (¶¶ 8(c), 73-77) and its 6.3 million of purported proved reserves as of June 30, 2007 (including 4.95 million BOE of proved undeveloped reserves) mirror exactly – in fact, logic, timeline and *post-facto* admission – the Desdemona allegations above.

---

[3] The plain language of this admission, *inter alia*, destroys the principal logic undergirding most of Canaccord's brief (*see* UW Br. at 7-13), which proceeds via the mistaken assumption that for plaintiff to allege defendants' awareness that 2008 reserves would decrease (rather than "may" decrease), plaintiff must allege that defendants were handed a reserve report for 2008 reserves prior to the June 26, 2008 Offering. As the foregoing has shown, defendants, at the time of the Offering, were themselves aware of then-extant factors (*e.g.*, the Parallel comment letter) which the petroleum engineers retained by Cano *also* took into account when producing their reserve report. Defendants' admission to have been expecting a *writedown* on the Barnett Shale clearly indicates that they had been so expecting *prior* to receiving any third-party reserve report.

7

First, on March 5, 2008, more than three months *prior* to the Offering, the SEC released a comment letter to Edge Petroleum Corp. ("Edge"), explaining that Edge could not book, as "proved", purported reserves from properties which Edge had no plans to develop within five years (Cano App. 220) (the "Five Year Rule"). As defendants admit (i) identical letters to other oil companies applying the Five Year Rule had been made public since September 2007 (UW Br. at 10); and (ii) the Five Year Rule was then the "current practice" (Cano Br. at 20) – hence plaintiff's characterization as "long extant regulatory standards" (¶¶ 8(c), 73-77).

Second, as was the case with the Parallel comment letter, the plain language of the SEC's comment letter to Edge made clear that the Five Year Rule was not an "exception" (that applied only to Edge) but rather the normally-applicable rule ("<u>Normally</u>, we would not expect the attribution of undeveloped proved reserves to be more than five years in the future.") (Cano App. 220) (emphasis added).

Third, the fact that the Prospectus referred to SEC comment "letters" issued to "certain companies" (in the plural) (¶ 7) that contained guidance that "may" cause 2008 proved undeveloped reserves to decrease (or not), suggests that, in addition to the Parallel letters, defendants were aware of further letters to *other* companies, including the "*series* of SEC comment letters to other companies during 2007 and 2008" (Cano Br. at 21) repeatedly applying the Five Year Rule relating to proved undeveloped reserves claims.

Fourth, defendants were also aware at the time of the Offering that the Five Year Rule would preclude Cano from claiming proved undeveloped reserves for Pantwist as of June 30, 2008, because defendants also were aware at the time of the Offering that Cano's capital constraints and capital expenditure priorities left Cano with insufficient funds to develop Pantwist (¶¶ 8(c), 76).

8

Fifth, defendants were also aware of the resulting impact to Cano's proved reserves: given that Cano did not have a five-year plan to develop Pantwist's 4.95 million BOE of reserves, proved reserves would be reduced by a like amount. Sixth, further confirming "First" through "Fifth" *supra*, defendants also admitted during their July 23, 2008 conference call that they had been expecting the reduction to Pantwist reserves (¶ 76).

## ARGUMENT

I.  **DEFENDANTS HAVE NOT MET THE STANDARDS FOR DISMISSING A SECTION 11 CLAIM**

On a motion to dismiss, all factual allegations and reasonable inferences drawn therefrom must be construed "in the light most favorable to the plaintiff." *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210 (5th Cir. 2004) (citations omitted). A complaint need not contain "detailed factual allegations" or "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* at 563 (citation omitted).

The Securities Act imposes liability on issuers, signatories such as officers of the issuer, and underwriters if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a); *Lone Star Ladies Inv. Club v. Schlotzky's Inc.*, 238 F.3d 363, 369 n.23 (5th Cir. 2001);[4] Section

---

[4] Defendants are held to a heightened duty to disclose with respect to a public offering. *See, e.g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976). Indeed, "the disclosure requirements associated with a stock offering are more stringent than, for example, the regular

11 recognizes that the disclosure of material information is "crucial in the context of a public offering, where investors typically must rely...on an offering price determined by the issuer and/or the underwriters of the offering[.]" *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1208 (1st Cir. 1996).

"A 'material' fact is one which a reasonable investor would consider significant in the decision whether to invest, such that it alters the 'total mix' of information available about the proposed investment." *Holzwasser v. Staktek Holdings, Inc.*, No. A-05-CA-239-LY, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) (*citing Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 207-08 (5th Cir. 1988)).

Section 11 imposes only a "'relatively minimal burden on a plaintiff,' requiring simply that the plaintiff allege that he purchased the security and that the registration statement contains false or misleading statements concerning a material fact." *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 201 (E.D.N.Y. 2000) (*quoting Herman & MacLean*, 459 U.S. at 381-82). As the Supreme Court explained, a court deciding a motion to dismiss shall be mindful that the issue of whether a statement or omission is material is usually a question for the fact finder. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

Section 11 does not require pleading or proof that a defendant acted with intent to defraud or even knew that misrepresentations or omissions had been made: thus, liability against the issuer of a security is "virtually absolute, even for innocent misstatements." *Herman & MacLean*, 459 U.S. at 382. "A representation of fact in a prospectus may be material, false and misleading without regard to the motive or intent of the author. Mere negligence, which is all

---

periodic disclosures called for in the company's annual Form 10-K or quarterly Form 10-Q filings...." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1208 (1st Cir. 1996).

10

that is necessary, may be inferred from falsity and materiality." *In re Prestige Brands Holding, Inc.*, No. 05 CV 06924 (CLB), 2006 WL 2147719, at *8 (S.D.N.Y. July 10, 2006).[5]

Section 12(a)(2) of the Securities Act likewise imposes liability on any person who "offers or sells a security...by means of a prospectus or oral communication, which includes an untrue statement of material fact...." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). Section 15 imposes joint and several liability on defendants who control persons under §§ 11 and 12. 15 U.S.C. § 77o. To state a claim pursuant to § 15 a plaintiff must allege (1) a primary violation under §§ 11 or 12; and (2) that the §15 defendant directly or indirectly controlled the person violating §§ 11 or 12. *See Kapps*, 379 F.3d at 221 (citation omitted). Applying these standards to the Complaint, defendants' motions to dismiss should be denied.[6]

### A.   The Pleading Standard

#### 1.   Rule 8 Notice Pleading Standards Govern Plaintiff's Claims

Notice pleading applies to plaintiff's Section 11 claims. *Kapps*, 379 F.3d at 210 ("Section 11 only requires notice pleading under Fed. R. Civ. P. 8 rather than the detailed pleading

---

[5] Defendants improperly argue that plaintiff must show that they were aware of the material misstatements and omissions in the offering documents at the time of the offering. Cano Br. at 10-11, 13-14; UW Br. at 3, 11-12. *See In re Twinlab*, 103 F. Supp. 2d at 203-05 ("defendant's knowledge of the misrepresentations is not an element of a [Securities Act] claim; indeed, a defendant can be held liable even for an innocent misstatement...Lack of knowledge of misleading statements in a prospectus is an affirmative defense... for which the *defendant* bears the burden of proof.") (emphasis in original). Canaccord raises in a footnote an affirmative defense of due diligence (UW Br. 4 fn 3). That defense, however, is not available at the motion to dismiss stage. *See* Point III, *infra*.

[6] While plaintiff is confident that the Amended Complaint's allegations in all respects meet the notice pleading standards applicable to the claims contained within it, if the Court grants any portion of the motions to dismiss before it, plaintiff respectfully requests leave to amend to cure any deficiencies identified by the Court. As the Fifth Circuit stated in *Lone Star*, Rule 15(a) "favors leave as a necessary companion to notice pleading and discovery." 238 F.3d at 367-69 (abuse of discretion for court to deny plaintiffs' request for leave to amend complaint to remove fraudulent allegations from § 11 claims; the new claims would not have "sound[ed] in fraud.").

mandated by Fed. R. Civ. P. 9(b)"); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 827 (S.D. Tex. 2004) ("Because Lead Plaintiff has alleged that the §11 claims asserted in this action sound only in strict liability and negligence, they are only subject to the notice pleading standard of Rule 8(a)[.]"); *In re Fleming Cos. Inc. Sec. & Deriv. Litig.*, No. 5-03-md-1530, 2004 WL 5278716, at *44 (E.D. Tex. June 16, 2004) ("Notice pleading under Rule 8 is all that is required to properly state 1933 Act claims."). The Complaint here alleges only strict liability and negligence claims. *See, e.g.*, ¶¶ 8(b) and 10.

Defendants contend, erroneously, that the Complaint's allegations "sound in fraud" and therefore are subject to the heightened pleading standards of Rule 9(b). *See* Cano Br. at 13-14; UW Br. at 3-4, 16-18. There are at least two reasons why Rule 9(b) does not apply: (1) plaintiff has made no claim that defendants committed any fraudulent act; and (2) no allegations supporting plaintiff's claims under §§ 11, 12(a)(2) and 15 of the Securities Act utilize any scienter element that could lead to confusion with a fraud cause of action.

In *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994), relied upon by defendants, Rule 9(b) applied because of the "wholesale adoption of the allegations under the securities fraud claims for purposes of the Securities Act claims." That is not an issue here; the Complaint alleges only Securities Act claims. There are no claims brought for securities fraud under the Exchange Act.

Similarly, defendants maintain that, under *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), the "applicable test" for determining whether Rule 9(b) applies is whether the Complaint includes "'wording and imputations...classically associated with fraud'" and "an allegation of 'materially false and misleading written statements.'" Cano Br. at 13; *see also* UW Br. at 18. This argument is incorrect. The language defendants cite to mirrors the statutory language of

Section 11, which by definition cannot trigger the application of Rule 9(b). *See* 15 U.S.C. § 77k (providing liability "on account of a *false* registration statement" which contains "an *untrue* statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not *misleading*") (emphasis added).[7]

Moreover, the *Rombach*, plaintiffs brought fraud claims under Section 10(b) of the Exchange Act and non-fraud claims under Section 11 of the Securities Act, but did not even plead negligence as a basis for the Section 11 claims, leaving fraud as the only basis for the complaint. *See Rombach*, 355 F.3d at 172. In contrast to *Rombach*, the Complaint here does not assert any 10(b) claim, and expressly pleads strict liability and negligence as the basis for its Securities Act claims, using language drawn from the Securities Act itself. *See, e.g.*, ¶¶ 8, 10, 53, 63, 71, 82, 83, 94, 95, 102. *Rombach* applied Rule 9(b) as to the issuer (against which Section 10(b) fraud claims had been brought), but held that claims against the underwriter defendants were subject to Rule 8(a)'s notice pleading requirements because those claims "sound[ed] in negligence." 355 F.3d at 178.[8]

---

[7] *See also In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610, 2005 WL 323729, at *6 (S.D.N.Y. Feb. 9, 2005) ("The phrases 'materially incorrect,' 'untrue statements'...merely allude to language in...Section 11 of the the [Securities] Act."); *Lone Star Ladies*, 238 F.3d at 369 (where plaintiff alleged defendant "made untrue statements of material facts and omitted to state material facts, in violation of 15 U.S.C. § 77k," "[t]hose claims do not 'sound in fraud' and cannot be dismissed for failure to satisfy Rule 9(b)").

[8] Defendants' citations are inapposite because they concerned (i) clear instances of alleged fraudulent conduct and (ii) complaints which alleged Section 10(b) fraud claims. *See Coronel v. Quanta Capital Holdings, Ltd.*, No. 07-1405, 2009 WL 174656, *15, 19 (S.D.N.Y. Jan. 26, 2009) (complaint alleged both Section 10(b) and Section 11 claims); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-0976, 2008 WL 4449280, *16, *32 (S.D.N.Y. Sept. 30, 2008) (complaint alleged that defendants "deliberately withheld...information from investors"); *Magruder v. Halliburton Co.*, No. 3-05-CV-1156, 2009 WL 854656, at *14-15 (N.D. Tex. Mar. 31, 2009) (complaint, alleging only Sections 10(b) and 20(a) claims); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (complaint alleged only Section 10(b) claims); *Pedroli ex rel. Microtune Inc. v. Bartek*, 564 F. Supp. 2d 683, 685 (E.D. Tex.