CTJ/RMT
ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 SEP -1  PM 2: 54

CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

| | |
|---|---|
| **TRUK INTERNATIONAL FUND LP,** | |
| **Plaintiff,** | |
| **vs.** | **No. 4:09-CV-308-A** |
| **DAVID W. WEHLMANN, CANO PETROLEUM, INC., S. JEFFREY JOHNSON, MORRIS B. SMITH, BEN DAITCH, MICHAEL J. RICKETTS, PATRICK McKINNEY, RANDALL BOYD, DONALD W. NIEMIEC, ROBERT L. GAUDIN, WILLIAM O. POWELL, III, CANACCORD ADAMS, INC., and CANACCORD CAPITAL CORPORATION,** | |
| **Defendants.** | |

## DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTIONS TO DISMISS THE AMENDED COMPLAINT

Bill F. Bogle
HARRIS, FINLEY & BOGLE, P.C.
777 Main Street Suite 3600
Fort Worth, Texas 76102-5341

*Attorneys for S. Jeffrey Johnson,*
*Morris B. Smith, Ben Daitch, Michael*
*J. Ricketts and Patrick McKinney.*

Michael L. Dinnin
Patrick Craine
William J. Moore
BRACEWELL GUILIANI
1445 Ross Avenue, Suite 3800
Dallas, TX 75202

John F. Batter, III
Phillipa Jonas Gage
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, MA 02102

*Attorneys for Canaccord Adams, Inc.*
*and Canaccord Capital Corporation*

Ralph H. Duggins
Scott A. Fredricks
CANTEY HANGER LLP
600 W. 6th St., #300
Fort Worth, Texas 76102

Jonathan J. Lerner
Gregory A. Litt
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

*Attorneys for Cano Petroleum,*
*Inc., David W. Wehlmann,*
*Randall Boyd, Donald W.*
*Niemiec, Robert L. Gaudin and*
*William O. Powell, III*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................ii

**INTRODUCTION**..........................................................................................................1

**ARGUMENT**..............................................................................................................3

I.      THE AMENDED COMPLAINT IS SUBJECT TO RULE 9(B)'S PLEADING
        STANDARD AS WELL AS THE BELL ATLANTIC CORP./IQBAL
        STANDARD, NEITHER OF WHICH IT CAN SATISFY...............................................3

II.     PLAINTIFF CANNOT STATE A CLAIM BY QUIBBLING ABOUT CANO'S
        CAUTIONARY LANGUAGE ...................................................................................5

III.    PLAINTIFF HAS FAILED TO ALLEGE FACTS DEMONSTRATING A
        MATERIAL MISREPRESENTATION OR OMISSION.................................................7

        A.      Plaintiff Failed to State a Claim Relating to the Desdemona and Pantwist
                Reserves..........................................................................................................7

        B.      Plaintiff Failed to State a Claim Relating to the Panhandle Reserves ..................10

IV.     THE DROP IN CANO'S STOCK PRICE DOES NOT DEMONSTRATE A
        SECURITIES LAW VIOLATION ..............................................................................13

V.      THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
        PREJUDICE..........................................................................................................14

**CONCLUSION** ..........................................................................................................15

## **TABLE OF AUTHORITIES**

### CASES

*In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005) .......................................... 10

*In re Anchor Gaming Securities Litigation*, 33 F. Supp. 2d 889 (D. Nev. 1999) ........................... 4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................... 3, 5, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 3, 5, 12

*Central Laborers' Pension Fund v. Integrated Electric Services Inc.*, 497 F.3d 546
    (5th Cir. 2007) ..................................................................................................................... 5

*Credit Suisse First Boston Corp. v. ARM Finance Group, Inc.*,
    No. 99 CIV 12046, 2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) .......................................... 7

*In re Donald J. Trump Casino Securities Litigation.-Taj Mahal Litig.*, 7 F.3d 357 (3rd
    Cir. 1993) ............................................................................................................................ 8

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ................................................. 1, 13

*Eizenga v. Stewart Enterprises, Inc.*, 124 F. Supp. 2d 967 (E.D. La. 2000) ............................... 10

*In re Globalstar Securities Litigation*, No. 01 Civ. 1748, 2003 WL 22953163
    (S.D.N.Y. Dec. 15, 2003) ..................................................................................................... 7

*Guitierrez v. Logan*, No. H-03-1812, 2005 WL 2121554 (S.D. Tex. Aug. 31, 2005) ................. 14

*Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. 1981) .............................................. 6

*In re iAsia Works, Inc., Securities Litigation*, No. C 01-3224, 2002 WL 1034041
    (N.D. Cal. May 15, 2002) ................................................................................................. 6, 13

*Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004) ...................................................... 6

*Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976, 2008 WL 4449280
    (S.D.N.Y. Sept. 30, 2008) ..................................................................................................... 4

*Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001) ............... 14

*In re Marion Merrell Dow Inc. Securities Litigation*, No. 92-0609-CV-W-6,
    1993 WL 393810 (W.D. Mo. Oct. 4, 1993) .......................................................................... 7

*McKinney v. Irving Independent School District*, 309 F.3d 308 (5th Cir. 2002) ........................ 14

*In re Merrill Lynch & Co. Research Reports Securities Litigation*, 289 F. Supp. 2d 416 (S.D.N.Y. 2003) ........................................................................................................... 13

*In re OPUS360 Corp. Securities Litigation*, No. 01Civ.2938, 2002 WL 31190157 (S.D.N.Y. Oct. 2, 2002) ................................................................................................... 6

*Oppenheim Pramerica Asset Management S.A.R.L. v. Encysive Pharmaceuticals, Inc.*, No. H-06-3022, 2007 WL 2720074 (S.D. Tex. Aug. 31, 2005) ........................... 14

*In re Prudential Securities Inc. Limited Partnerships Litigation*, 930 F. Supp. 68 (S.D.N.Y. 1996) ...................................................................................................... 6, 7

*R2 Investments LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005) ...................................... 5

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ....................................................... 4

*Rosenbaum Capital LLC v. McNulty*, 549 F. Supp. 2d 1185 1191 (N.D. Cal. 2008) .................... 7

*SEC v. Universal Express, Inc.*, 546 F. Supp. 2d 132 (S.D.N.Y. 2008) ..................................... 13

*Schoenhaut v. America Sensors, Inc.*, 986 F. Supp. 785 (S.D.N.Y. 1997) ................................... 4

*In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003) .................................. 13, 14

## STATUTES

15 U.S.C. § 77s ................................................................................................................... 8

15 U.S.C. § 78w .................................................................................................................. 8

N.D. Tex. L.R. 15.1 ........................................................................................................... 14

iii

Defendants respectfully submit this joint reply memorandum of law in further support of their motions to dismiss the Amended Complaint of Plaintiff Truk International Fund LP pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a)(2) and 9(b).[1]

**INTRODUCTION**

Nothing in the Plaintiff's Response and Brief in Opposition to Defendants' Motions to Dismiss ("Response") changes the fact that this lawsuit is not really about securities law violations, but is instead an impermissible attempt to secure investment insurance to cover a drop in Cano's stock price which occurred as the market price of oil declined.  *See Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 345 (2005).

In its June 26, 2008 Offering of common stock ("Offering"), Cano cautioned its investors that it "expect[ed]" its upcoming proved reserve estimates "may decrease" from its 2007 estimates in light of guidance on reserve estimation that the SEC had recently provided to other companies.  With the benefit of hindsight, Plaintiff quibbles with Cano's warning, claiming that instead of "may" decrease Cano should have said its reserves "will" decrease.  However, as Defendants pointed out in their motions to dismiss, courts routinely reject securities claims premised on precisely this kind of linguistic quibble, holding that the distinction between "may" and "will" in an offering's cautionary language is not material.  (*See* Motion at 15-16.)

Plaintiff's purportedly contrary authorities are inapposite.  They concern defendants who -- unlike the Defendants here -- made knowingly false projections of their companies' fortunes, and attempted to excuse their fraudulent statements with cautionary language.  Plaintiff does not dispute that Cano's Prospectus and other offering documents

---

[1]     The Motion by Cano Petroleum, Inc. & the Individual Defendants to Dismiss the Amended Complaint and Brief in Support is referred to herein as the "Motion."  The Motion by Canaccord Adams Inc. and Canaccord Capital Corporation is referred to herein as the "Canaccord Motion."

("Offering Documents") did not include <u>any</u> projection or forward-looking statement about Cano's proved reserves, except specifically to warn investors that the upcoming estimates might be <u>lower</u> than previous estimates from the prior year. In these circumstances, the cautionary language is sufficient and the Complaint should be dismissed.

In any event, while the Response blithely states that at the time of the Offering, the "defendants already knew or should have known that reserves would decline materially" (Resp. at 2), Plaintiff does not allege a single contemporaneous fact to substantiate its conclusory assertion. Instead, Plaintiff relies both on an erroneous view of the legal force of non-binding SEC staff comment letters sent to other companies, and on post-Offering statements (including an outside engineering firm's report not available until after the Offering) that, by definition, do not supply the required pre-Offering facts necessary to support Plaintiff's claim.

As the SEC itself has made abundantly clear, staff comment letters "set forth staff positions on <u>a particular filing</u> only and do not constitute an official expression of the Commission's views," and they "are limited to the specific facts of the filing to which they apply, and <u>do not apply to other filings</u>." (App. 210 (emphasis added).)[2] To be sure, at the time of the Offering, Cano "expect[ed]" that its proved reserve estimates "may decrease" in light of the SEC staff's comments, which is exactly the warning it conveyed to investors. It was impossible, however, to <u>be certain</u> whether Cano's outside engineers would determine, in the exercise of their independent judgment, to apply concepts from the SEC comment letters to Cano's situation, or if they did, what the result of that application would be. Plaintiff's unsupported claim to the contrary is nothing more than a classic allegation of fraud by hindsight.

---

[2] "App." refers to the Appendix to the Motion by Cano Petroleum, Inc. & the Individual Defendants to Dismiss the Amended Complaint and Brief in Support.

Plaintiff's remaining allegation -- that the reserve estimates for Cano's Panhandle property were decreased in 2008 because they had been misstated in 2007 -- also is not supported by factual allegations sufficient to state a plausible claim. Plaintiff alleges that because Cano had not begun waterflooding operations on its Granite Wash leases in the Panhandle, Cano violated the regulatory standard that counts proved undeveloped reserves only if there have been "actual tests in the area and in the same reservoir." (Resp. at 18.) But Plaintiff fails to allege a single fact to support its illogical conclusion that simply because Cano had not begun waterflooding, no tests had been conducted in the vast Granite Wash area by Cano or any other active producer.

Plaintiff also argues that because Cano ultimately downgraded its Granite Wash reserves in 2008, "common sense" dictates that there were no "actual tests." However, even if it were possible to conclude that the decrease in reserves could have resulted from a lack of actual tests, Plaintiff ignores all the other possibilities that could have led to the downgrade, including Cano's own publicly disclosed explanation. As the Supreme Court has explicitly held, the mere possibility of a claim for relief is not sufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

As Plaintiff has failed to point out any way it could cure these deficiencies were it permitted to replead, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I.    THE AMENDED COMPLAINT IS SUBJECT TO RULE 9(B)'S PLEADING STANDARD AS WELL AS THE BELL ATLANTIC CORP./IQBAL STANDARD, NEITHER OF WHICH IT CAN SATISFY**

As Defendants have demonstrated, the Amended Complaint falls far short of the stringent pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure. In seeking to avoid application of Rule 9(b), Plaintiff contends that it does not allege fraud, but a review of the

3

Amended Complaint shows that Plaintiff has clearly attempted to allege fraudulent conduct

(albeit erroneously), and therefore must satisfy Rule 9(b). In any event, the Amended Complaint

fails to meet even the minimum pleading requirements necessary to state a claim under Rule 8,

as recently elucidated by the Supreme Court in *Bell Atlantic Corp.* and *Iqbal.*

On its face, Plaintiff's theory of liability is that Defendants knew, and failed to

disclose, that Cano's reserve estimates were going to decrease. (*See* Resp. at 3 (claiming that "at

the time of the Offering...information was not merely 'available to' defendants but in fact known

by defendants"), 5, 19-21, 27.) Nevertheless, Plaintiff contends that its Securities Act claims do

not sound in fraud, relying on the fact that they are not accompanied by fraud claims under the

Securities Exchange Act of 1934. (*See* Resp. at 12-13.) But as numerous decisions have held,

"a complaint may sound in fraud even where, as here, no fraud claims under the Exchange Act

are asserted." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-0976, 2008 WL 4449280, *11

(S.D.N.Y. Sept. 30, 2008). *See also In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 892 &

n.3 (D. Nev. 1999); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 795 (S.D.N.Y. 1997).

Plaintiff attempts to distinguish *Ladmen Partners* based on allegations in that case

that defendants "deliberately withheld ... information from investors." (Resp. at 13 n.8.) But

here, as in *Ladmen Partners*, Plaintiff specifically alleges that Defendants "knew, long prior to

the offering" that Cano's proved reserve figures "were highly overstated," and that they "did not

disclose" this in the Offering Documents. (Am. Compl. ¶ 8.)[3] Accordingly, the Amended

Complaint is subject to the heightened pleading standard. *See, e.g., Rombach v. Chang*, 355 F.3d

---

[3]      Plaintiff argues that "[e]ven if the Amended Complaint's allegations against the Cano defendants sound in
fraud, the allegations against Canaccord clearly do not." (Resp. at 14 n.9.) But Plaintiff made these allegations of
fraud against all Defendants, without distinguishing among them. (*See, e.g.*, Am. Compl. ¶ 8.) Where a complaint
makes no effort to distinguish between underwriter defendants and the issuer or individual defendants, and instead
makes general allegations, the heightened pleading standard should apply to all claims against the defendants. *See,
e.g., Ladmen Partners*, 2008 WL 4449280, at *12-13.

164, 171-72 (2d Cir. 2004) ("nominal efforts" to assert that claims do not sound in fraud "are unconvincing where the gravamen of the complaint is plainly fraud" (quotation marks omitted)).

Even if Rule 9(b) was not applicable, the Amended Complaint must be dismissed under Rule 8, because Plaintiff has failed to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. As Defendants demonstrated in their motions, Plaintiff has not alleged any facts which show that the cautionary language in the Offering Documents was misleading, or that the 2007 reserve estimates -- the most recently available estimates -- violated any regulatory standard. Put simply, Plaintiff has failed to plead factual content "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 545.

Plaintiff's reliance on the familiar refrain that allegations must be construed "in the light most favorable to the plaintiff" (Resp. at 9) is no substitute for pleading sufficient facts to support its claim. As the Fifth Circuit explained even before *Bell Atlantic* or *Iqbal*, the courts "will not strain to find inferences favorable to the plaintiffs and ... will not accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quotation marks omitted). *See also Cent. Laborers' Pension Fund v. Integ. Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

## II.     PLAINTIFF CANNOT STATE A CLAIM BY QUIBBLING ABOUT CANO'S CAUTIONARY LANGUAGE

Plaintiff cannot manufacture a securities violation based on Cano's use of the word "may" instead of "will" in the specific cautionary language set forth in the Offering Documents. Courts do not allow securities claims to proceed when Plaintiffs merely quibble that

5

cautionary language in offering documents should have said that an event "will" occur, when the documents specifically warned that the event "may" occur. *See In re OPUS360 Corp. Sec. Litig.*, No. 01Civ.2938, 2002 WL 31190157, at *8 (S.D.N.Y. Oct. 2, 2002) ("*OPUS360*"); *In re iAsia Works, Inc., Sec. Litig.*, No. C 01-3224, 2002 WL 1034041, at *9-10 (N.D. Cal. May 15, 2002) ("*iAsia*"). Tellingly, Plaintiff failed to respond to these closely analogous authorities, which were discussed at length in Defendants' motion. (*See* Motion at 15-17.)[4]

Plaintiff also failed to address the Fifth Circuit's 2004 decision in *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 214-25 (5th Cir. 2004) (*see* Motion at 15), which squarely held that a court can take into account cautionary language in a prospectus when it considers a motion to dismiss a Securities Act claim. *Kapps*, 379 F.3d at 214-16. In light of *Kapps*, Plaintiff is simply wrong to contend, based on a single, much older Fifth Circuit decision, that "[t]he Fifth Circuit has squarely rejected these types of defenses." (*See* Resp. at 2 (citing *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. 1981)).)

Lacking any answer to the most closely analogous decisions, Plaintiff attempts to rely on *Huddleston* and *In re Prudential Securities Inc. Limited Partnerships Litigation*, 930 F. Supp. 68 (S.D.N.Y. 1996), to contend that "[a] contingent warning is insufficient when defendants are aware of an actual materialized risk." (Resp. at 20; *see also id.* at 2, 24.) Both of those cases are inapposite. Unlike Defendants here, the *Huddleston* and *Prudential* defendants made knowingly false forward-looking statements regarding their companies' financial status. In *Huddleston*, the defendants made a "deliberate misstatement of the cost anticipated" to complete construction of the company's core project, *see Huddleston,* 640 F.2d at 544, and the *Prudential*

---

[4]    Plaintiff addressed *iAsia* and *OPUS360* in a single footnote to its discussion of Rule 9(b), but failed to address the directly relevant portions of those decisions discussed in Defendants' Motion. (*See* Resp. at 15 n.10.)

defendants made falsely upbeat projections of the resale values of the company's airplanes, *Prudential*, 930 F. Supp. at 73-74. The *Prudential* court explained that even the "general warnings" in the prospectus in that case, *id.* at 74, would have been sufficient "ninety-nine times out of hundred," *id.* at 75, but they were not sufficient to absolve defendants who made "[u]nrealistic and knowingly false projections ...with no basis," *id.* at 74.[5]

In sharp contrast, Cano's Offering Documents did not contain any estimate of current reserves or projection of future reserves. Indeed, Plaintiff does not dispute that Cano's only statements in the Offering Documents about its current or future reserves were warnings that Cano's year-old estimates might decline. Unlike the defendants in *Huddleston* and *Prudential*, who made knowingly false projections, Defendants in this case did not make any projections, and forthrightly cautioned investors that Cano's future estimates could decrease.

## III. PLAINTIFF HAS FAILED TO ALLEGE FACTS DEMONSTRATING A MATERIAL MISREPRESENTATION OR OMISSION

Even if Plaintiff could predicate a securities claim on the difference between "may" and "will," Plaintiff still has failed to allege sufficient facts to show that use of the word "may" was inaccurate in this case.

### A. Plaintiff Failed to State a Claim Relating to the Desdemona and Pantwist Reserves

In the Amended Complaint, Plaintiff contended that Cano was forced to lower its reserve estimates in light of "long-extant regulatory standards." (Am. Compl. ¶ 8(c).) In its

---

[5]     Plaintiff cites four additional cases in support of its assertion that the cautionary language was insufficient. (Resp. at 21 n.12.) Like *Huddleston* and *Prudential*, three of the cases contained knowingly false forward-looking statements and are thus inapposite. *See In re Globalstar Sec. Litig.*, No. 01-CV-1748, 2003 WL 22953163, at *11 (S.D.N.Y. Dec. 15, 2003); *In re Marion Merrell Dow Inc. Sec. Litig.*, No. 92-0609-CV-W-6, 1993 WL 393810, at *9 (W.D. Mo. Oct. 4, 1993); *Rosenbaum Capital LLC v. McNulty*, 549 F. Supp. 2d 1185, 1191 (N.D. Cal. 2008). The fourth case also is inapposite because the cautionary language did not specifically address the relevant risk, and the omitted information was contrary to investors' "common understanding." *See Credit Suisse First Boston Corp. v. ARM Fin. Group, Inc.*, No. 99-CV-12046, 2001 WL 300733, at *8-9 (S.D.N.Y. Mar. 28, 2001).

Response, Plaintiff does not point to any such "long extant" regulations or, for that matter, any binding regulations at all, that required Cano to lower its estimates. Instead, as Plaintiff acknowledges, the only sources of guidance relevant to Cano's reserve decrease were letters that SEC staff members sent to <u>other companies</u>, which became publicly available during Cano's 2007-2008 fiscal year.[6] Plaintiff's contention -- that these SEC letters, standing alone, mandated Cano to state with certainty that its estimates would decrease -- is legally erroneous.[7]

The SEC itself has made clear that comment letters from its staff to specific companies "'do not constitute an official expression of the Commission's views . . . [,] are limited to the specific facts of the filing to which they apply, and do not apply to other filings.'" (Motion at 21 (quoting App. 210).) Undaunted, Plaintiff erroneously characterizes the staff comments as "rules," "general rules," or "regulations." (*See, e.g.*, Resp. at 6, 8, 23-27.) To be sure, the SEC has ample authority to enact rules codifying the comments made by members of its staff. *See, e.g.*, 15 U.S.C. §§ 77s, 78w. But it did not do so, and Plaintiff cannot unilaterally convert staff letters about other companies' specific filings into rules of general applicability simply by excerpting language from those letters. (*See* Resp. at 23, 26.)

Contrary to Plaintiff's conclusory assertion with respect to the decrease in reserve estimates for Desdemona, the SEC did not enact a "general rule limiting offset booking locations to two rather than eight offsets." (Resp. at 23.) Likewise, with respect to the Pantwist property, Plaintiff distorts the SEC's own guidelines by claiming that staff letters to Edge Petroleum and

---

[6]     The folly of Plaintiff's allegations is underscored by its bizarre insistence that SEC staff letters available for less than a single reporting period constitute "long extant regulatory standards." (*See* Resp. at 8.)

[7]     Plaintiff also criticizes Cano for not disclosing several details about these properties, using inflammatory language like "secretly" and "[u]nbeknownst to the public." (Resp. at 4, 5.) But Plaintiff never contends, because it cannot, that there is any legal requirement that Cano disclose such a granular level of information. *See, e.g.*, *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 369 n.12 (3d Cir. 1993) (management should not "bury the shareholders in an avalanche of trivial information"). Neither can Plaintiff demonstrate that disclosure of additional details would have altered the propriety of Cano's specific warning in the Offering Documents.

certain other companies established a so-called "Five-Year Rule," which would categorically

disallow proved reserves not planned to be developed within five years. (Resp. at 8, 26.)[8]

Cano was not required by the SEC staff's comment letters to lower its estimates;

instead, application of the considerations in those letters was a matter of judgment for Miller &

Lents, Ltd., the engineering firm that conducted the annual study of Cano's reserves (Motion at

8-9). As Plaintiff concedes, Cano is required to report proved reserve estimates as of June 30,

the end of its fiscal year, and "Cano typically reports its proved reserved (as of June 30) in 'mid-

July' each year after receiving a reserve report from [its] petroleum engineering firm." (Resp. at

3 (citations omitted).) Plaintiff has not alleged any facts to support a claim that Defendants knew

-- prior to receiving Miller & Lents' report in July -- how Cano's consultants would exercise

their judgment.[9] Thus, at the time of the Offering, there is no basis to allege that Defendants

could have represented with certainty that Cano's reserve estimates would decrease.

Accordingly, in the Offering Documents, Cano took note of the SEC staff's letters that discussed

reserve estimation, and explained that it "expect[ed]," in light of those letters, that its reserve

estimates might decrease.[10]

---

[8]     Plaintiff also blatantly misquotes the SEC's regulatory definition of proved reserves. Plaintiff claims that
"SEC Regulations and Cano's own standards for proved reserves contain verbiage that qualifying reserves will be
produced 'with reasonable certainty…in future years…under existing economic and operating conditions.'" (Resp.
at 26 (emphasis added).) But the actual quote, without Plaintiff's selective omissions, does not limit proved reserves
to those that "will be produced" in future years. Rather, the quote refers to oil and gas reserves that the data
demonstrates "with reasonable certainty to be recoverable in future years." (Am. Compl. ¶ 50.) The regulation also
does not include any limitation -- five years or otherwise -- on the term "in future years." Plaintiff's use of ellipses
to improperly attempt to conform the law to the deficient allegations of the Amended Complaint should be rejected.

[9]     Plaintiff actually concedes the Canaccord Defendants' lack of knowledge, approvingly quoting the
underwriters' argument that "'the Complaint does not allege a single fact to show that the Underwriter Defendants,
who are not intimately involved with the Company's operations, knew any information about the specific amounts
of 2008 reserves prior…to the Secondary Offering.'" (Resp. at 14 n.9 (quoting Canaccord Motion at 11).)

[10]    Plaintiff's reference to the July 2008 conference call is not evidence that the prospectus was misleading.
(See Resp. at 7 & n.3.) Cano's statement during the conference call that it was "expecting to write-down on the
Barnett Shale," is entirely consistent with Cano's warning that it was expecting its proved reserves may decrease.

Plaintiff contends that because Section 11 contains no scienter requirement, "[k]nowledge is not an element of plaintiff's Section 11 claims" and it "is not a factor in deciding this motion." (Resp. at 16.) This argument is puzzling: Plaintiff's core allegation is that at the time of the Offering, the defendants "knew or should have known that reserves would decline materially." (Resp. at 2.) In any event, there is no fact alleged to show it was certain -- at the time of the Offering -- that the reserves would decrease in response to the SEC's non-binding comments. Thus, the argument over whether Defendants knew they would decrease is a red herring.

According to Plaintiff, Cano's post-offering July 2008 disclosure somehow demonstrates that Cano must have known, weeks earlier, that its reserve estimates would surely decrease. (Resp. at 23-24, 27.) In the final analysis, this allegation boils down to a classic example of pleading by hindsight, which is routinely and properly rejected by the courts. *See, e.g., In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 853 (N.D. Tex. 2005); *Eizenga v. Stewart Enters., Inc.*, 124 F. Supp. 2d 967, 985 (E.D. La. 2000).

**B.    Plaintiff Failed to State a Claim Relating to the Panhandle Reserves**

Plaintiff also fails to allege sufficient facts to support its claim that Cano's reserve estimates for the Granite Wash area of its Panhandle property were misstated in 2007, thus requiring correction in 2008. Plaintiff argues Cano's proved undeveloped reserves violated the requirement that contemplated oil and gas recovery techniques "have been proved effective by actual tests in the area and in the same reservoir." (Resp. at 17-18.)[11] But Plaintiff has

---

[11]    Defendants demonstrated that the other regulatory requirements highlighted in the Amended Complaint related only to proved <u>developed</u> reserves or to proved undeveloped reserves in <u>undrilled</u> areas, neither of which is relevant here. (Motion at 23.) Plaintiff refused to concede that the requirements relating to "undrilled" areas are inapplicable in this case. (*See* Resp. at 18.) Nevertheless, Plaintiff did not respond to Defendants' explanation that those requirements are not relevant to Cano, whose properties have already been drilled for primary recovery. (*See* Motion at 23-24.) Plaintiff contends -- at the outset of its Response -- that Cano engages in "primary oil/gas

*(cont'd)*

completely failed to allege facts to show that there were no "actual tests" to support the 2007

estimates, or that it was a lack of "actual tests" that caused Cano to reduce its Panhandle reserve

estimates in 2008. Instead, Plaintiff's claim relies entirely on speculation and faulty logic.

Plaintiff alleged in the Amended Complaint that Cano's proved undeveloped

reserves were misstated because Cano's operations exclusively focused on the nearby Brown

Dolomite area. However, Plaintiff now acknowledges that proved undeveloped reserves can be

claimed despite a lack of operations. (Resp. at 18; *see* Motion at 22-23; Canaccord Motion 13-

16.) Changing tack, Plaintiff attempts to avoid dismissal by arguing more broadly that Cano

"had not done any waterflooding at all in the Granite Wash," citing paragraph 62 of the

Amended Complaint, which quotes from Cano's July 18, 2008 conference call. (Resp. at 18.)

But the quoted language merely contrasts Cano's Brown Dolomite operations to its lack of

Granite Wash operations. In any event, even if Cano <u>had</u> stated that it "had not done any

waterflooding at all in the Granite Wash," that, too, would be insufficient to establish a

regulatory violation.

In particular, the regulation does not include a requirement that waterflooding

operations must already be underway for reserves to be recorded. Rather, the regulation only

requires that the contemplated techniques for recovering reserves "have been proved effective by

actual tests in the area and in the same reservoir." (Am. Compl. ¶ 50.) Accordingly, because

Plaintiff has failed to allege facts to show that no testing occurred in the area, it has not stated a

claim. Plaintiff does not provide any basis for its conclusory assertion that the requirement of

"actual tests" could be met only if Cano had "injected water into the Granite Wash." (*See* Resp.

*(cont'd from previous page)*
recovery," but the passages in the Amended Complaint repeatedly state only that Cano was engaged in secondary
and tertiary recovery. (*See* Resp. at 2; Am. Compl. ¶¶ 3, 37-42.) In any event, even if the requirements for undrilled
areas were relevant, Plaintiff has failed to adequately allege that they were not met. (*See* Motion at 23.)

at 5, 17-19.)  Simply pointing to Cano's lack of waterflooding does not support Plaintiff's much

broader claim that there were no "actual tests in the area and in the same reservoir," conducted

either by Cano or by another company operating nearby in the vast Granite Wash.[12]

Nor can Plaintiff avoid its failure to plead facts indicating that there were no tests

by arguing that to conclude otherwise would be "contrary to defendants' own actions and to

common sense." (Resp. at 19.)  Plaintiff argues that because "Cano ultimately decided to

remove 5 million BOE of reserves" when it estimated its reserves in July 2008, the only

plausible inference is that no tests had been done.  (*Id.*)  But to reach this conclusion, Plaintiff's

"common sense" would impermissibly require the Court to assume away every other factor that

could have impacted the decision whether to claim proved reserves, including every relevant

"'geological, geophysical, engineering and economic'" factor relating to the property (Motion at

4 (quoting App. 35)).  Notably, the Court would also have to assume away the actual reason for

Cano's decision to decrease its reserve estimates -- a reason Cano provided in its public filings

shortly after disclosing its 2008 estimates.  (*See* Motion at 24 n.43.)[13]

In the words of the Supreme Court, Plaintiff's allegations "do not permit the court

to infer more than the mere possibility of misconduct," *Iqbal*, 129 S. Ct. at 1950, if even that.

Plaintiff's conclusory allegations are therefore insufficient to state a claim.  *See Bell Atlantic*

*Corp.*, 550 U.S. at 567 (finding plaintiffs' complaint deficient under Rule 8(a) because parallel

---

[12]    Plaintiff does not dispute that "Cano has just a few relatively small leases" in the Granite Wash, which is "an actively developed oil trend" (Motion at 24).

[13]    As Plaintiff notes, after Cano received its consultants' annual reserve report, Cano publicly explained it was not going to count Granite Wash reserves as proved until it began to develop them. (*See* Am. Compl. ¶ 62.) Cano also explained that it reclassified reserves in 2008 because of the emerging industry practice -- suggested in SEC comment letters -- that proved undeveloped reserves would not be counted absent a near-term development plan. (Motion at 9-10.) Plaintiff has not alleged any basis to doubt Cano's stated reason to decrease its estimates, and as explained above, Cano appropriately warned its investors of the risk posed by the recent SEC letters.

conduct, while consistent with an unlawful anti-competitive agreement, could be explained by

lawful, free-market actions and thus did not plausibly suggest an unlawful agreement).

## IV.    THE DROP IN CANO'S STOCK PRICE DOES NOT DEMONSTRATE A SECURITIES LAW VIOLATION

Plaintiff's suggestion that the drop in Cano's stock price demonstrates a securities

law violation lacks any legal basis.  If Plaintiff were correct, then every decline in a company's

stock price would provide a basis for litigation, contrary to the Supreme Court's clear holding

that the securities laws are not intended "to provide investors with broad insurance against

market losses," *Dura Pharm., Inc.*, 544 U.S. at 345.  (*See* Motion at 1.)  Thus, in the closely

analogous *iAsia* decision, the court held that the alleged omissions were immaterial in light of the

cautionary language in the prospectus, even though the company's stock price dropped

precipitously after the allegedly omitted information was released to the public.  *IAsia*, 2002 WL

1034041, at *2, 7-10.

This well-worn principle is particularly relevant here, where Cano's stock price

declined along with the stock prices of most other oil companies following the precipitous drop

in oil prices during the summer of 2008.[14]  Here, again, Cano acted properly, emphasizing in the

Prospectus that "[d]eclines in oil and natural gas prices," which could be caused by numerous

uncontrollable factors, "could have a material adverse effect on [Cano's] financial condition,

results of operations and reserves."  (App. 33.)[15]

---

[14]    Defendants pointed out the widespread drop in oil prices and its effect on stock prices in the Motion, and Plaintiff did not demur.  (*See* Motion at 1.)  Courts may take judicial notice of widespread market events on a motion to dismiss.  *See, e.g., SEC v. Universal Express, Inc.*, 546 F. Supp. 2d 132, 137 n.7 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003).

[15]    Plaintiff's reference to *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003) is unavailing. In *Vivendi*, defendant had alleged a "truth on the market" theory, arguing that the market was aware of the company's

*(cont'd)*

## V.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff has twice failed to plead a claim under the Securities Act. Any attempt to replead again would be futile, because Plaintiff cannot negate the clear cautionary language in the Offering Documents. The Amended Complaint should therefore be dismissed with prejudice.

In any event, the Court should not grant Plaintiff's generic request for leave to amend "to cure any deficiencies identified by the Court" (Resp. at 11 n.6). As the Fifth Circuit has explained, it is appropriate to deny a plaintiff's request to amend where the plaintiff fails to "make clear the nature of such amendment." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002). *See also Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharms., Inc.*, No. H-06-3022, 2007 WL 2720074, *6 (S.D. Tex. Sept. 18, 2007) (refusing to "further delay the final resolution of this dispute"). Leave to amend should not be granted where a plaintiff fails to "demonstrate how he would replead his claims with greater specificity," "proffer[] a proposed second amended complaint," or "suggest[] in his responsive pleadings any additional facts not initially pleaded that could, if necessary, cure the pleading defects." *Guitierrez v. Logan*, No. H-02-1812, 2005 WL 2121554, at *13 (S.D. Tex. Aug. 31, 2005). Likewise, this Court requires that a motion to amend a pleading be accompanied by the proposed amended pleading. *See* N.D. Tex. L.R. 15.1.[16]

Plaintiff failed to attach a proposed amended pleading, explain the nature of the proposed amendment, or demonstrate how the amendment would cure the deficiencies already identified in the Amended Complaint. Accordingly, leave to replead should be denied.

---

*(cont'd from previous page)*
true financial condition. *Id.* at 181-82. Here, the 2008 estimate of Cano's proved reserves was unknown to both the Defendants and the market, and was not available until Miller & Lents performed its evaluation.

[16]    *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 367 (5th Cir. 2001), the case Plaintiff relies on, is unavailing because plaintiffs there submitted a proposed amended complaint with its request to replead.

## CONCLUSION

For all the foregoing reasons, the Defendants respectfully request that the

Amended Complaint be dismissed with prejudice.

Dated: Fort Worth, Texas
    September 1, 2009

By: _Bill F. Bogle_
    BILL F. BOGLE (Bar No. 02561000)

HARRIS, FINLEY & BOGLE, P.C.
777 Main Street Suite 3600
Fort Worth, Texas 76102-5341
(817) 870-8700, Fax (817) 332.6121
bbogle@hfblaw.com

*Attorneys for S. Jeffrey Johnson, Morris B.
Smith, Ben Daitch, Michael J. Ricketts and
Patrick McKinney*

By: _____
    MICHAEL L. DINNIN (Bar No. 05888100)
    PATRICK CRAINE (Bar No. 24001940)
    WILLIAM J. MOORE  (Bar No. 24051075)

BRACEWELL GUILIANI
1445 Ross Avenue, Suite 3800
Dallas, TX 75202
(214) 468-3800, Fax (214) 758-8348
michael.dinnin@bgllp.com
patrick.craine@bgllp.com

John F. Batter, III *(admitted pro hac vice)*
Phillipa Jonas Gage *(admitted pro hac vice)*
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, MA 02102
(617) 526-6000, Fax (617) 526-5000
john.batter@wilmerhale.com
phillipa.gage@wilmerhale.com

*Attorneys for Defendants Canaccord Adams, Inc.
and Canaccord Capital Corporation*

By: _Scott Fredricks_
    RALPH H. DUGGINS (Bar No. 06183700)
    SCOTT A. FREDRICKS (Bar No. 24012657)

CANTEY HANGER LLP
600 W. 6th St. #300
Fort Worth, Texas 76102
(817) 877-2800, Fax (817) 877-2807
rduggins@canteyhanger.com
sfredricks@canteyhanger.com

Jonathan J. Lerner *(admitted pro hac vice)*
Gregory A. Litt *(admitted pro hac vice)*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000, Fax (212) 735-2000
jlerner@skadden.com
glitt@skadden.com

*Attorneys for Cano Petroleum, Inc., David W.
Wehlmann, Randall Boyd, Donald W. Niemiec,
Robert L. Gaudin and William O. Powell, III*

15

## CONCLUSION

For all the foregoing reasons, the Defendants respectfully request that the

Amended Complaint be dismissed with prejudice.

Dated: Fort Worth, Texas
       September 1, 2009

By: _____
    BILL F. BOGLE (Bar No. 02561000)

HARRIS, FINLEY & BOGLE, P.C.
777 Main Street Suite 3600
Fort Worth, Texas 76102-5341
(817) 870-8700, Fax (817) 332.6121
bbogle@hfblaw.com

*Attorneys for S. Jeffrey Johnson, Morris B.
Smith, Ben Daitch, Michael J. Ricketts and
Patrick McKinney*

By: _____
    MICHAEL L. DINNIN (Bar No. 05888100)
    PATRICK CRAINE (Bar No. 24001940)
    WILLIAM J. MOORE  (Bar No. 24051075)

BRACEWELL GUILIANI
1445 Ross Avenue, Suite 3800
Dallas, TX 75202
(214) 468-3800, Fax (214) 758-8348
michael.dinnin@bgllp.com
patrick.craine@bgllp.com

John F. Batter, III *(admitted pro hac vice)*
Phillipa Jonas Gage *(admitted pro hac vice)*
WILMER CUTLER PICKERING
   HALE & DORR LLP
60 State Street
Boston, MA 02102
(617) 526-6000, Fax (617) 526-5000
john.batter@wilmerhale.com
phillipa.gage@wilmerhale.com

*Attorneys for Defendants Canaccord Adams, Inc.
and Canaccord Capital Corporation*

By: _____
    RALPH H. DUGGINS (Bar No. 06183700)
    SCOTT A. FREDRICKS (Bar No. 24012657)

CANTEY HANGER LLP
600 W. 6th St. #300
Fort Worth, Texas 76102
(817) 877-2800, Fax (817) 877-2807
rduggins@canteyhanger.com
sfredricks@canteyhanger.com

Jonathan J. Lerner *(admitted pro hac vice)*
Gregory A. Litt *(admitted pro hac vice)*
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000, Fax (212) 735-2000
jlerner@skadden.com
glitt@skadden.com

*Attorneys for Cano Petroleum, Inc., David W.
Wehlmann, Randall Boyd, Donald W. Niemiec,
Robert L. Gaudin and William O. Powell, III*

15

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on September 1, 2009 as follows:

**Via First Class Mail**
Ira M. Press
Daniel Hume
Beverly Tse
KIRBY MCINERNEY LLP
825 Third Avenue
New York, NY 10022
*Counsel for Plaintiff*

**Via Hand Delivery**
Roger F. Claxton
Claxton & Hill, PLLC
10000 North Central Expressway
Suite 725
Dallas, TX 75231
*Counsel for Plaintiff*

**Via Hand Delivery**
Bill F. Bogle
Harris, Finley & Bogle, P.C.
777 Main Street Suite 3600
Fort Worth, Texas 76102-5341
*Counsel for Defendants S.*
*Jeffrey Johnson, Morris B. Smith,*
*Ben Daitch, Michael J. Ricketts and*
*Patrick McKinney*

**Via First Class Mail**
John F. Batter, III
Phillipa Jonas Gage
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, MA 02102
*Counsel for Defendants Canaccord*
*Adams, Inc. and Canaccord Capital*
*Corporation*

**Via Hand Delivery**
Patrick Craine
Michael L. Dinnin
William J. Moore
BRACEWELL GUILIANI
1445 Ross Avenue, Suite 3800
Dallas, TX 75202
*Counsel for Defendant Canaccord*
*Adams, Inc. and Canaccord Capital*
*Corporation*

Scott A. Fredricks

Attorney for Defendants Cano Petroleum,
Inc., David W. Wehlmann, Randall Boyd,
Donald W. Niemiec, Robert L. Gaudin and
William O. Powell, III

16